UNITED STATES of America,
Appellant,

v.

LEHIGH VALLEY COOPERATIVE
FARMERS, INC., and Suncrest
Farms, Inc., Appellee.

LEHIGH VALLEY COOPERATIVE
FARMERS, INC., Appellee,

v.

Ezra Taft BENSON, Secretary of Agriculture of the United States of America,
Appellant.

SUNCREST FARMS, INC., Appellee,

v.

Ezra Taft BENSON, Secretary of Agriculture of the United States of America,
Appellant.

Nos. 13289–13291.

United States Court of Appeals
Third Circuit.

Argued Dec. 2, 1960.

Decided Feb. 20, 1961.

Rehearing Denied March 10, 1961.

Neil Brooks, Asst. Gen. Counsel, U. S. Dept. of Agriculture, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., J. Charles Krause, Atty., United States Dept. of Agriculture, Washington, D. C., on the brief), for appellant.

Willis F. Daniels, Harrisburg, Pa., (Harold W. Swope, Harrisburg, Pa. Weston C. Overholt, Jr., Philadelphia, Pa., on the brief), for appellee.

David D. Furman, Atty. Gen. of New Jersey, William D. Hill, Deputy Atty. Gen., on brief for Floyd R. Hoffman, Director of Office of Milk Industry, Dept. of Agriculture of New Jersey, amicus curiae.

Frederic P. Lee, Washington, D. C., Benjamin M. Quigg, Jr., Philadelphia, Pa., John A. Cardon, Washington, D. C., Leslie H. Deming, Syracuse, N. Y., Frank B. Lent, New York City, William J. Moore, New York City, Anson W. H. Taylor, Jr., Philadelphia, Pa., Richard Wiles, Syracuse, N. Y., on brief on behalf of Dairymen's League Cooperative Ass'n, Inc., and others, amici curiae.

Reuben Hall, Boston, Mass., Benjamin M. Quigg, Jr., Philadelphia, Pa., Hardy, Hall & Grimes, Boston, Mass., Morgan, Lewis & Bockius, Philadelphia, Pa., on brief, for New England Milk Producers' Ass'n, amicus curiae.

Edward P. Little, Jr., Montrose, Pa., Daniel C. Williams, Syracuse, N. Y., on brief for Eastern Milk Producers Cooperative Ass'n, Inc., amicus curiae.

Robert G. Blabey, Counsel to the Dept. of Agriculture and Markets of New York, Albany, N. Y., on the brief, for Don J. Wickham, Com'r of Agriculture and Markets of New York, amicus curiae.

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The prime issue presented by these appeals is whether certain provisions of New York-New Jersey Milk Marketing Order, 7 C.F.R. § 927.1 et seq., (hereinafter referred to as Order No. 27), requiring all non-pool handlers of milk, to make a "compensatory payment" to the Producers Settlement Fund for all non-pool fluid milk distributed by them in the marketing area, 7 C.F.R. §§ 927.83, 927.84, contravenes the Agricultural Adjustment Act of 1933, as amended by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq.

Docket No. 13,289, is an enforcement action brought by the United States pursuant to § 8a(6) of the Act, 7 U.S. C.A. § 608a(6), to require Lehigh Valley Cooperative Farmers, Inc. and Suncrest Farms, Inc., to make the compensatory payments required by the order. Dockets Nos. 13,290 and 13,291, are actions by the Lehigh Valley Cooperative Farmers, Inc., and Suncrest Farms, Inc., respectively to obtain judicial review of decisions of the Judicial Officer in the United States Department of Agriculture pursuant to § 8c(15) of the Act, 7 U.S.C.A. § 608c(15) (B). The Judicial Officer

held that the contested provisions for compensatory payment were valid.

In the district court, all three actions were consolidated for trial.[1] In its opinion reported in 183 F.Supp. 80, (1960), that court, although finding the provisions for compensatory payments supported by the record and "incidental to * * * and necessary to effectuate the other provisions of such order,". invalidated them under the authority of the majority holding in Kass v. Brannan (Judge Learned Hand dissenting), 2 Cir., 1952, 196 F.2d 791.[2] The court noted however:

> "Although we are not compelled to accept that Court's decision under the concept of *stare decisis* as it applies to Federal Courts and although we might have reached a contrary result if initially called upon to interpret § 608c(5), we do not feel justified in now rejecting the interpretation there placed upon § 608c (5) (A) and upon the earlier version of Order No. 27. That Court's opinion is always entitled to great weight."

The primary policy of Congress in enacting the Federal Milk Control Program and particularly Order No. 27, applicable in the case at bar,[3] was " * * * to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity prices * * *." 7 U.S.C.A. § 602(1) (1952). Regarding milk, the plight of the farmers (referred to as producers in the milk industry) was caused by the fierce competition to procure the most lucrative market

for it. Since fluid milk brought the highest return to the producer and cream or milk product utilization was less rewarding, the rivalry was for that market. To alleviate the harsh effects of that struggle on producers, Congress enacted the governing law vesting the Secretary of Agriculture with broad regulatory powers. Pursuant to the statutory authorization, the Secretary of Agriculture has promulgated regional milk orders based on a system of milk pooling. Those orders, with their programs of classification and reporting are geared to provide the producer in the specified marketing area with a uniform price for all milk delivered by him for processing, irrespective of the particular use to which it is ultimately put.

This is accomplished by the following method. Under Order No. 27 milk utilization is classified into three fundamental groups: Class I (fluid milk); Class II (cream); Class III (milk products, butter, cheese, etc. * * *). The Market Administrator fixes a price for each class. He then determines from reports filed by the handlers the volume of milk used in each classification throughout the marketing area. From those figures, the Administrator computes the value of all milk used in the Marketing Area by multiplying the market volume figure in each class by the class price. After adding the totals and making certain additions and/or subtractions not relevant here, he divides that figure by the aggregate volume of milk of all classifications used in the Marketing Area, to determine the uniform blend price which is paid to all pro-

1. In Docket No. 13,289, pending final outcome of the cases, the district court ordered that the compensatory payments be paid into the registry of the court, and enjoined Lehigh and Suncrest from further violating Order No. 27.

2. Specifically the district court stated: " * * * in light of the Kass v. Brannan decision, supra, the Order as promulgated did not comply with Section 608c (5) (A) of the Agricultural Marketing Agreement Act, 7 U.S.C.A., in that the prices were not uniform as to *all* handlers

and in particular as to these two plaintiff handlers. Therefore, that part of the Order requiring compensatory payments to the Producers Settlement Fund by them must be stricken down."

3. For a more detailed discussion of the Order and the problems of the milk industry, see Nebbia v. People of State of New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940; United States v. Rock Royal Co-op., 1938, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446.

ducers, regardless of the utilization of their milk. Since each handler's use of the milk received from producers would not average out to the uniform blend price, a Producers Settlement Fund was created. This fund is contributed to by those handlers whose total class utilization price of the milk exceeds the uniform blend price and is drawn upon by those handlers whose total class utilization price of the milk is less than the uniform blend price. Thus although the producer receives the uniform blend price regardless of the utilization of his milk, the handler must account to all other handlers through the Producers Settlement Fund for the price of his actual use of the milk purchased by him.

Lehigh and Suncrest are not fully regulated handlers, the largest part of their milk business being outside the marketing area. However, since a certain percentage of their outlets for milk (approximately 5%) are in the marketing area, they are subject to the compensatory payment provisions of Order No. 27, 7 C.F.R. §§ 927.83, 927.84, which provide that where a non-pool handler distributes milk for Class I utilization in the marketing area, he must pay into the Producers Settlement Fund a compensatory payment measured by the difference between the Class I and Class III price.

Lehigh and Suncrest attacked this provision and were sustained by the district court on the authority of Kass v. Brannan, supra. That case held that mandatory compensatory payments imposed upon non-pool handlers for fluid milk distributed in the marketing area were, " * * * inconsistent with the terms and conditions specified in section 8c(5) (A) * * *." That section reads as follows:

"Milk and its products; terms and conditions of orders.

"(5) In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, and (except as provided in subsection (7) of this section) no others:

"(A) Classifying milk in accordance with the form in which or the purpose for which it is used, and fixing, or providing a method for fixing, minimum prices for each such use classification which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. Such prices shall be uniform as to all handlers, subject only to adjustments for (1) volume, market, and production differentials customarily applied by the handlers subject to such order, (2) the grade or quality of the milk purchased, and (3) the locations at which delivery of such milk, or any use classification thereof, is made to such handlers."

To reach its conclusion, the court in Kass compared the cost of the milk to pool handlers with that of non-pool handlers. It stated that although the cost to a pool handler is the class price, a non-pool handler's cost is composed of two items, the amount it pays the seller and the amount of the compensatory payment. The court decided that since the payment is based on the difference between two class prices without taking into account the initial cost to the handler, the result is a disparity between the non-pool handler's total cost and the pool handler's total cost which violates the uniformity provision of Section 8c(5) (A) of the Act. We cannot agree with the holding.[4]

The Kass opinion assumes that the minimum class price provision of Section 8c(5) (A) is designed to equalize the actual costs of milk to all handlers distributing milk in the marketing area.

---

**4.** We note that a recent case in the District Court of Connecticut, Knudsen Brothers Dairy, Inc. v. Benson, Civil No. 8145 (D.C.Conn. July 19, 1960), followed the mandate of its circuit as set forth in the Kass opinion. As it adds nothing to the conclusion in Kass it will not be discussed.

And Lehigh and Suncrest assert in their brief:

"The result sought to be achieved by Congress in this section [8c (5) (A)] was that through the device of class prices *all handlers' costs for milk utilized in the marketing area should be uniform* so that no one group of handlers could enjoy an unfair advantage or suffer an unfair disadvantage." (Emphasis suplied.)

This interpretation misconceives the plain language of the section and suggests a policy not contemplated by Congress.

■■■■ Section 8c(5) (A) of the Act makes no reference to equalizing either fully regulated or partially regulated handlers' costs. It provides solely for uniform minimum class prices for which the pool handlers must account to the Producers Settlement Fund. Nor does it take account of the initial cost of milk to handlers. As has been recognized by the Supreme Court, Section 8c(5) (A) does not prevent the pool handler from paying a premium to producers for milk over and above the uniform blend price. However, his accountability to the Producers Settlement Fund would still be measured by the use class prices fixed by the Market Administrator under Section 8c(5) (A). Stark v. Wickard, 1944, 321 U.S. 288, 303, 64 S.Ct. 559, 88 L.Ed. 733. These latter prices are based on the use value of the milk. Neither fully regulated nor partially regulated handlers' initial costs are involved. Lawson Milk Company v. Benson, D.C.N.D.Ohio 1960, 187 F.Supp. 66, 73.

Moreover to *imply* the thought urged by Lehigh and Suncrest as the motivation behind Section 8c(5) (A) and thereby measure the compensatory payment by using the Kass formula of equalized actual costs, would be repugnant to the *express* purpose set forth in the Act itself, i. e., regional regulation to secure a stable market and parity prices for producers. To illustrate: If a non-pool handler's initial cost was the Class I (fluid milk) price, he could, under the principle of the Kass case, distribute milk in the marketing area in any volume without accounting to the Producers Settlement Fund or making a compensatory payment. If his initial cost was greater than the Class I (fluid milk) price, the same result would occur. If his initial cost was slightly less, his compensatory payment would be a token one.

■■ It is evident that in all three illustrations, employment of the Kass theory to measure compensatory payments would impair the integrity of the regional marketing scheme, since the compensatory payments would bear no relation to the loss of the Class I fluid milk utilization in the marketing area. In contradistinction, the payments provided for in Order No. 27, complement the regional marketing idea. They are designed to compensate the pool for the loss of the Class I fluid milk utilization and they in turn protect the uniform blend price in the marketing area. We cannot, as urged by Lehigh and Suncrest, reasonably impute to Congress a policy in one section of the Act that would directly conflict with the comprehensive regulatory undertaking of the complete Act as conceived by Congress.[5]

■■ We are also convinced that, in the light of the structure and avowed

---

5. Examination of the Kass opinion on its own facts reveals that Kass was a *handler* who purchased cream and condensed milk from another handler. Pursuant to Section 927.9(h) of Order No. 27, Kass was charged compensatory payments on the cream measured by the difference between the Class II-A and Class IV-A price and on the condensed milk measured by the difference between the Class II-B and Class IV-A price. Clearly Section 8c(5) (A) has no application in such a situation. It only contemplates minimum class prices which *handlers* shall account to the pool for on milk purchased from *producers*. It makes no reference to situations where *handlers* purchase milk from other *handlers*. Even if it could be said that it was designed to limit the imposition of compensatory payments at all, and we hold that it was not, it would be applicable solely to handler-producer transactions, and not to handler-handler transactions.

purpose of the Act, Section 8c(5) (A), has no application to non-pool handlers. Lehigh and Suncrest would have it that the Act makes no distinction between pool and non-pool handlers and that therefore the provision of Section 8c(5) (A) which states: "Such prices shall be uniform as to all handlers," guarantees them a cost equal to that of pool handlers.[6] But there is not the slightest indication that Congress used the language of Section 8c(5) (A), with the thought of providing for equalized costs between pool and non-pool handlers and thereby stifling the effectiveness of the whole plan. "An elaborate enactment like this, devised by those who know the needs of the industry and drafted by legislative specialists, is to be treated as an organism. Every part must be related to the scheme as a whole."[7] This was acknowledged early in the history of the Act by the Supreme Court when it held that agency cooperatives were subject to the Act even though they did not technically purchase the milk of their producers. United States v. Rock Royal Co-op., 1938, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. See also Bailey Farm Dairy Co. v. Anderson, 8 Cir., 1946, 157 F.2d 87, 95.

■ The Act does not attempt nationwide regulation, but rather " * * * authorizes a marketing agreement and order to be issued for such production or marketing regions or areas as are practicable." United States v. Rock Royal Co-op., supra, 307 U.S. at page 576, 59 S.Ct. at page 1014. "The Act recognizes that the factors which affect the problem vary in different production and marketing areas and that the question therefore is one that must be dealt with regionally on the basis of the particular conditions." Bailey Farm Dairy Co. v. Anderson, supra, 157 F.2d at page 90. This establishment of the Act on a regional marketing basis necessitates differentiation between pool and non-pool handlers. The Secretary of Agriculture following the letter and spirit of the statute has implemented this concept. He has conducted hearings and investigations to determine the need in certain regions for Milk Marketing Orders, and where called for has promulgated them. The pool handlers under those Orders are subject to full regulation. They must report to the Market Administrator in the region, must pay the uniform blend price to producers and must account to the Producers Settlement Fund for their actual utilization of the Milk. The non-pool handlers are not subject to full regulation, are not required to pay the uniform blend price to their producers and do not have to account to the Producers Settlement Fund for their utilization of the Milk. Absent the compensatory payments, they are unfettered as to price, market and amount of distribution.[8]

Lawson Milk Company v. Benson, D.C. N.D.Ohio 1960, 187 F.Supp. 66, 70–71; see also, dissenting opinion of Judge Learned Hand in Kass v. Brannan, 196 F.2d at page 799.

6. As a matter of statutory construction if we were to adopt the theory of Lehigh and Suncrest and thereby include non-pool producers within the ambit of the term "producers" in Section 8c(5) (A), the provisions of the next section, 8c (5) (B), which requires payment of the the uniform blend price to "producers", would also be applicable to Lehigh and Suncrest. In effect, the Market Administrator would have the choice of either imposing full regulation on Lehigh and Suncrest or no regulation at all. So limiting the discretion of the Market Ad-

ministrator is inconsistent with the tenor of the entire act and contrary to the accepted judicial interpretation of its terms. See, e. g., Queensboro Farms Products v. Wickard, 2 Cir., 1943, 137 F.2d 969, 977; Bailey Farm Dairy Co. v. Anderson, 8 Cir., 1946, 157 F.2d 87, 94–95.

7. Frankfurter, J., in Stark v. Wickard, 1944, 321 U.S. 288, 311, 315, 64 S.Ct. 559, 573, 88 L.Ed. 733 (dissenting opinion).

8. Although admittedly Lehigh Valley Cooperative Farmers, Inc., is subject to another milk order, as we view Section 8c (5) (A) that has no bearing on its position concerning sales in the Order No. 27 area.

■ The aim of Section 8c(5) (A) in this control pattern is certain. It provides the foundation upon which the Secretary of Agriculture charges the pool handlers in the marketing area with their actual utilization of the milk despite the fact that under Section 8c(5) (B), they pay the producer the uniform blend price. It in no way dictates equalized costs between pool handlers or between pool and non-pool handlers. This provision, coupled with the Producers Settlement Fund provides part of the mechanism to achieve the ultimate goal of the Act, stabilizing the producers market on the regional level. Consonant with that salutary carefully wrought design, its only valid construction is that its application is limited to all pool or fully regulated handlers for the regional marketing area to determine the accountability of those handlers to the pool.

■■ The final contentions of Lehigh and Suncrest are that the provisions for compensatory payments are not allowed by the Act and not supported by the record. As we have stated previously, the district court found the provisions "incidental to * * * and necessary to effectuate the other provisions of such order" under Section 8c(7) (D) of the Act and also found the provisions supported by the record. We agree with the district court's conclusion. 183 F. Supp. at pages 89, 90. See also Lawson Milk Company v. Benson, supra, 187 F. Supp., at pages 72, 73.

The judgment of the district court will be reversed and the proceedings remanded to that court with instructions (1) to affirm the ruling and decision of the Judicial Officer in Lehigh Valley Cooperative Farmers, Inc. v. Benson, No. 13,290, and Suncrest Farms, Inc. v. Benson, No. 13,291; and (2) to issue an injunction as prayed for in the complaint in United States v. Lehigh Valley Cooperative Farmers, Inc., et al., No. 13,289 to require the appellees to comply with the terms of §§ 927.29(d) and 927.83 of the New York-New Jersey Milk Marketing

Order for the payment of compensatory payments and to pay to the Market Administrator the money in the registry of the district court in this proceeding.